COLEMAN, JUSTICE, DISSENTING:
 

 ¶ 28. If the Mississippi Supreme Court evenly splits the votes of its participating members in a case and issues a decision in which the votes are, as they were in the instant case, four-to-four on an issue, then the decision of the trial court - in the case of the previous remand of the case
 
 sub judice
 
 the Court of Appeals - stands. Other than serving as a functional affirmance as described above, any opinion issued by an evenly divided court has no value and
 places no mandate on the trial court during remand. Accordingly, the only mandate from an appellate court operational when the instant case was remanded following appeal was that issued by the Court of Appeals in its opinion.
 
 See
 

 Estate of Eubanks v. Eubanks
 
 ,
 
 197 So.3d 878
 
 (Miss. Ct. App. 2014) (
 
 Eubanks I
 
 ). Contrary to the position taken by the majority, the chancellor did not violate the Court of Appeals' mandate when it reversed course and found that the elements of
 
 quantum meruit
 
 were not met. Moreover, given the standard of review, the chancellor did not err in refusing to award a
 
 quantum meruit
 
 payment to attorneys who actively worked against the interests of the would-be payees. Accordingly, and with respect, I dissent.
 

 I. The chancellor violated no mandate.
 

 ¶ 29. As the majority documents, after we granted
 
 certiorari
 
 to review the Court of Appeals' opinion in
 
 Eubanks I
 
 , we split evenly on the issue of whether the facts of the case warranted a
 
 quantum meruit
 
 award. As detailed in our
 
 certiorari
 
 opinion, the Court of Appeals' opinion on the issue therefore controlled.
 
 Estate of Eubanks v. Eubanks
 
 ,
 
 197 So.3d 861
 
 , 871 (¶ 52) (Miss. 2015) (
 
 Eubanks II
 
 ) . After detailing several factual shortcomings in the record, the Court of Appeals wrote, "Such a basis for compensation
 
 falls short of the showing required by quantum meruit recovery
 
 , particularly against unrepresented minors, where the record shows no notice, informed consent, or acquiescence on behalf of David Jr. and Allison."
 
 Eubanks I
 
 , 197 So.3d at 893 (¶ 45) (emphasis added). Later, the Court directed the chancellor, "We remand for further proceedings
 
 for the chancellor to determine entitlement to the claimed fee
 
 and to provide express findings in support thereof."
 
 Id.
 
 at 893 (¶ 46). The Court of Appeals' majority did not require the detailed factual findings the majority faults the chancellor for not providing, unless the chancellor awarded fees. The chancellor did not do so and, therefore, did not violate the applicable mandate.
 

 II. The chancellor did not err when, upon remand, she held that the attorneys who acted in direct conflict to the interests of the minors were not entitled to
 
 quantum meruit
 
 recovery.
 

 ¶ 30. The Court "will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied."
 
 Estate of Johnson v. Johnson
 
 ,
 
 237 So.3d 698
 
 , 704 (¶ 14) (Miss. 2017) (citing
 
 Sanderson v. Sanderson
 
 ,
 
 824 So.2d 623
 
 , 625-26 (Miss. 2002) ).
 

 ¶ 31. In her July 2015 Judgment, the chancellor acknowledged the above-discussed directive from the Court of Appeals, writing, "[T]he Court of Appeals instructed that in further proceedings the chancellor should determine entitlement to the claimed fee and to provide express findings in support thereof." She then found that "insufficient evidence was offered to show that the
 
 quantum meruit
 
 factors have been met." Although the majority and I disagree regarding whether the Court of Appeals' opinion required the chancellor to beef up her findings of fact should she find a
 
 quantum meruit
 
 award inappropriate, we have sufficient facts in the record to affirm her decision. I see no point in remanding the case to the chancellor when the record before us shows that she correctly decided the issue.
 

 ¶ 32. When we considered the instant matter after granting
 
 certiorari
 
 before, I joined the four members of the Court who
 would have held on appeal that the elements of
 
 quantum meruit
 
 were not met.
 
 See
 

 Eubanks II
 
 , 197 So.3d at 870-871 (¶¶ 50-52). Specifically, we would have held that the attorneys could not prove the second element, that they rendered valuable services on behalf of the minors they sought to charge.
 
 Id.
 
 at 871 (¶ 50). On behalf of the four, Presiding Justice Dickinson wrote as follows:
 

 Here, the second element clearly was not satisfied. Castigliola and Kiyhet were retained to represent the estate and engaged in settlement negotiations on behalf of the estate. What is more, Castigliola argued that he never represented David Jr. and Allison; he actively sought to preclude their recovery altogether of any portion of the settlements; he attempted to have the chancellor change her prior adjudication of beneficiaries and exclude David Jr. and Allison; and he worked to reduce the portion they finally obtained.
 

 Id.
 
 at 871 (¶ 51). It remains true that the conflict of interest between the attorneys and the minors created by the attorneys' active litigation against the minors' interest and Castigliola's admission that he never represented the minors conclusively demonstrate that the services rendered by the attorneys were not on the minors' behalf. The doctrine of
 
 quantum meruit
 

 applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
 

 In re Estate of Fitzner
 
 ,
 
 881 So.2d 164
 
 , 174 (¶ 25) (Miss. 2003) (quoting
 
 Hans v. Hans
 
 ,
 
 482 So.2d 1117
 
 , 1122 (Miss. 1986) ). The Court should be loathe to hold that an attorney, whose actions toward a party in litigation would have constituted a serious ethical breach had the party in question actually been a client, should "in good conscience and justice" be paid by said party.